Good morning. Good morning. Are you going to divide up your time, or are you going to do all of the appellant's arguments? Our plan today, with Your Honor's permission, is that I will be doing the argument exclusively. However, if Your Honor has any questions about the arbitration, the pre-bankruptcy litigation, Mr. Glencia will be available to answer. Okay. And do you want to reserve some time for rebuttal? Yes, please. Three minutes. Three minutes. Okay. Please go ahead. Thank you. Good morning, Your Honors. May it please the Court. Leslie Cohen of Leslie Cohen Law, P.C., and Rex Glencia of Plum Square Law, LLP, on behalf of Appellant, Who's Dog Productions, Inc. Your Honors, the Bankruptcy Court's denial of our motion for relief from stay to proceed with the arbitration was an abuse of discretion and should be reversed for five distinct reasons. First, the Bankruptcy Court, based on the record, should and could have found that the case was a bad-faith two-party dispute warranting relief from the stay. Second, the Bankruptcy Court was wrong in determining that the issues presented in the pre-petition arbitration should be considered core bankruptcy issues. They were actually non-core, and had they been considered non-core, you would have been required to lift the stay to respect the arbitration clause. Thirdly, the Bankruptcy Court's reliance on the bankruptcy estate's professed lack of financial ability to pay the cost of an arbitration was an improper basis to deny relief, primarily because there was no law whatsoever to support that concept. Fourth, the Bankruptcy Court's belief that it could not stop the trustee from selling this footage, even if it lifted the stay, was both wrong, since the Bankruptcy Court had the power to control it, and was also an improper basis to deny relief from stay and enforcement of the arbitration provision. And fifth, the Bankruptcy Court abused its discretion in its determination that allowing the arbitration to proceed would conflict with the underlying purpose of the Bankruptcy Code, as the record did not support that finding. On my first point, Your Honors, the Bankruptcy Court's determination that the Dennis Bankruptcy case was not a two-party dispute was based on an incorrect reading of the record. The only non-insider... This is not a factual question. It is, I believe, Your Honor. Thank you for asking. The only non-insider creditor was a taxing agency, which was owed $8,000. There was another creditor, Mr. Fisher, who was owed something in the range of $180,000, $190,000, but he was actually the principal of the debtor's stepdad, and that was admitted in the trustee's brief, both that he was a stepfather and that he was an insider. So there were no non-insider creditors. So two-party dispute alone would have been enough. Is that a per se rule? I don't think it's a per se rule that if it's a two-party dispute, it has to be disputed. It has to, but I think... And that you can't look at the insiders. I think when considering a two-party dispute, I believe that insiders are not considered. Generally, though, my simplistic view is many of these bad faith cases come in reorganizations by Mary 11. If the debtor is willing to say, here are all my assets, liquidate them, and be done, why is that bad faith? I think that's a fair point, and we never understood why she put this thing into a seven, honestly. But it was clearly done, and again, the trustee admitted it was done to block the arbitration. Maybe Ms. Vangello thought she might have personal exposure, and that was why she did it. Your honors might recall from the record that they had actually conveyed this asset out, and the trustee somehow pulled it back in. So this contract right wasn't even in the estate when she filed. And that kind of cuts against the bad faith, though, doesn't it? I don't think so, because she listed it, and it was clearly done right on the eve of the arbitration, and then they conveyed back the rights back into the estate. And that's really covered by the trustee? The trustee made demand. They said, sure, yeah. And then they did list it in their schedules. They claimed in the schedules that it had been listed, that it had been made out in order to get financing, but it was claimed it was never in the schedules. So I think that's at worst neutral. And I do note the case of Hudson v. Martindale 504-BR-569, where an evidentiary error was found as a basis to find an abuse of discretion on an order. In that case, it was actually a granting of relief, and that was reversed. On my second point, the bankruptcy court's determination that the issues in the arbitration were core was an abuse of discretion. Per the transcript of the relief from state hearing, the bankruptcy court found that core matters. That's not a legal question? Core versus non-core? I think it is a legal decision. Okay. I see abuse of discretion. I think I'm stuck with abuse of discretion. If I'm not, then I'm happy, but whatever it was, it was wrong. Okay. Thank you, Your Honor. But the grounds that were listed by the bankruptcy court really actually didn't quite apply. First, the bankruptcy court said that whether or not an asset is property to the state is core. Second, whether an asset can be sold under Section 363 is core. And third, that marshaling of assets to pay creditors is core. Those things all may be true, although I think on the whether it's property to the state, maybe not. Maybe not. But in any event, none of those things were pled for relief in the arbitration. The prayer for relief in the arbitration is on page 162 of our excerpt. And I have it. Page 162 of our excerpt. And the prayer for relief in the arbitration was to determine that the claimant, my client, was not in breach of the agreement, that the debtor had not complied with the provisions of Paragraph 2 of the agreement by failing to obtain approvals and, as such, didn't have the right to advertise, distribute. And third, that the respondent, the debtor, didn't have the right to use Mr. Franco's name and likeness in connection with raising financing. Those aren't. Would you agree that the agreement, that the debtor signed the agreement was property of the estate? Subject to its terms. Sure. And the nature of that property interest, what that property interest was, depends on what those terms were, right? Well, I think in that regard, I would cite to the Tamilpay case and the Siegel v. FDIC. Both of those have a contract, have a fighting over rights to a tax refund. There's a statute at issue, there's a contract at issue, who owns what. And those were both still found to be non-core. So, and I guess there's Butner v. United States where you always have to look to state law or whatever the applicable law is. But I think on this, Siegel and Tamilpay v. FDIC are the main cases that say, even if that needs to be determined, it's still a non-core case. That just challenges me because, I mean, you can say an asset is property of the estate, but then I hark it back to the idea of the property being a bundle of sticks. You know, what sticks are in that bundle depends on what determines what that property is. And if the court can't decide what sticks are in the debtor's bundle, what does it mean to say the court has jurisdiction over property of the estate? Well, I think if that was the prayer for relief in the arbitration demand, that would be more compelling. But in the arbitration demand, they're asking to determine that the claimant, the appellant, was not in breach of the agreement. I see that. That helps to a large extent determine what rights the debtor's got. Because if the appellant were in breach, the debtor's rights would be very different than if the appellant were not in breach, right? Well, that may be so. But we also had the whole point where we argued that it was an executory contract. So certainly there are bankruptcy principles that may be relevant down the road. But first, none of that is sufficient to defeat the arbitration policy in our view. And for that we say. But we're not at assumption or rejection yet, right? I mean, that would present a different set of questions if somebody moved to assume. We filed that motion. It's never been moved on. I see. So we've done everything we can really here to try to resolve this. But in any event, I think the point being here is that they didn't match up. And so the basis that the bankruptcy judge used, whether it's property of the state, again, wasn't an issue in the arbitration, whether it could be sold under Section 363 and marshaling of assets, they were just different. They were apples and oranges. And, again, in the Tamil case and in FEMA versus FDIC, there were contract disputes that did look to other that it was whether the bankruptcy state was going to get this refund or not was an issue. But it depended on other law, and it was found to be a non-core. Here, just as was quoted in both Tamil Pei and I think in both cases, this lawsuit could and would exist and, in fact, did exist irrespective of the bankruptcy. And that is what a lot of the courts seem to look to in determining if it's non-core. If the lawsuit would have its very own life outside of bankruptcy, then it's considered by these decisions to be non-core. This lawsuit not only could, but it did. Unlike FDIC and unlike those other two cases, those hadn't even had a pre-bankruptcy litigation. We did. And an arbitration. And the policy that's strongly in favor of arbitration. So we think everything's sort of stacked in our favor that the bankruptcy court should have lifted this thing. On my third point, the bankruptcy court abused its discretion when it relied on the estate supposedly lacking in funds to pay for an arbitration. And the idea that this was the only asset in the estate. The lack of funds. This goes back to your other point, and they're kind of interrelated, because you can view what the court did as essentially a more holistic management of the case. There is a question whether it's an asset that the trustee is saying that they'd like to sell. In that process, it's not necessary, unless possibly, to determine the exact rights. You put it on the market. If somebody buys it, whatever they buy, that's a big question. But trustees sell things without exactly saying the bundle, complete bundle of states all the time. So why is it improper to be concerned about that? One of my concerns is that your position really is attacking the trustee's administration of the estate and saying, no, your administration of the estate and the attempt to litigate a possible asset is secondary to our right to fully determine and adjudicate and force the estate into arbitration. Again, it gets ultimately to the claims process. It seems you are looking at a different version of the claims process to say there was, you know, we are not in breach. Therefore, you're in breach. There is no contract. You have no bundle of states. Very fair point, Your Honor. That was not, however, what was quite prayed in the arbitration. Right, but this is the relief from state. Go ahead, General. Well, I think, granted that literally the point is that the core jurisdiction concept comes from where does the bankruptcy code change things, right? It changes things in two fundamental ways. If a right is created under the bankruptcy code, that's a rising under, right? That's really what you're arguing. It doesn't arise under. If the right to dispose of something is a function of the bankruptcy code, then it arises in. And what you're really saying is that the arising end is not a relevant concept here. And that's what I think, that's what I'm having a problem with, and I don't know if my colleagues are having the same problem. But that's where I'm stuck. I think the argument I'd make in response is that the arising end isn't enough when you have an arbitration clause and a pre-bankruptcy arbitration clause. Even though it's core? I don't know that it's core. I don't know. That's the question. Is it core? I don't think it's core. Because, again, this all was teed up, and this is in our briefing, and Mr. Glenzie can speak to it. The debtor accused Mr. Franco and his dog of breaching this contract. And he said, no, I didn't. And he was the one who initiated this litigation based on her assertion of breach. All pre-petition, all based on the arbitration. So for them to turn around, she files this bankruptcy, again, we don't know why. Maybe because she thinks her stepdad will get some money out of it. We don't know. But she files this bankruptcy, and then they say, okay, well, there's a bankruptcy now. Therefore, the arbitration is out the window, and the trustee can just jump in. And, by the way, the fact that he doesn't have any money on hand, even though there was nothing in the record to suggest that he either asked us to pay for the arbitration or have counsel record that counsel couldn't advance costs. There's none of that. There's like, oh, we don't have any money now, and, therefore, this now becomes core, and we don't have to go to arbitration. I don't think that any law supported that. So I get the holistic view. I see that. But I think if you take it too literally, then ultimately the arbitration becomes meaningless. So why adjourn to an arbitration? Because there's a bankruptcy, and there's no money, and then you're out the window. And I don't think that's what the cases say. I think that Sears and American Express has a very strong policy. It's a very heavy burden on the party opposing arbitration, and we submit the trustee didn't meet that burden, and I think I better save my time. Thank you. Thank you. Go ahead, please. Good morning, Your Honors. I'm Gary Klausner, along with my co-counsel, Ingrid Verden. We represent Edwin Walkowitz, who is the Chapter 7 trustee, and the appellee. Your Honor, I think I can distill our argument to really two points. One, did the subject matter of the arbitration include matters that would be considered core matters? Under Bankruptcy Code Section, I'm sorry, 28 U.S.C., Section 157B2. Secondly, did the Bankruptcy Court properly exercise its discretion in determining that the matters pending an arbitration, if litigated in the arbitration, would conflict with fundamental bankruptcy policies? Those are really the two issues. The trilogy of the Ninth Circuit cases, we have Eber, EDP, and Thorpe, all three cases, two of which were decided in 2012, one in 2016. All of them consistently said the same thing. And, by the way, in every case, the Bankruptcy Court had denied a motion to compel arbitration or for relief from state to permit arbitration. In each case, the District Court affirmed the Bankruptcy Court. In each case, the Ninth Circuit affirmed the District Court. In each case, finding that the Bankruptcy Court had properly found that the trustee had overcome the presumption of arbitration and had properly found, in each case, that the issues that would have been pending an arbitration were issues that involved fundamental bankruptcy policies, either dischargeability or the recovery of fortune transfers or the adjudication of claims. And what makes this case different but which supports even further Judge Kwan's decision is that there was actually a pending lawsuit in the Bankruptcy Court when Judge Kwan made his decision was an adversary proceeding commenced by the appellant for declaratory relief. So, Judge Kwan had before him the option of either sending the matter to arbitration, which would have only involved partial resolution of the issues between the parties, or proceeding with a declaratory relief action that covered the universe of issues in which appellants themselves had initiated. Now, on the question, because I said there are two issues, one of which is were the matters in the arbitration core, I think there's no better way of deciding that issue than to look what appellants themselves said. So, in their lawsuit, in the declaratory relief action, which interestingly, appellants never discuss. They didn't attach the complaint to their record on appeal and their brief is virtually silent on the fact that there was this companion adversary proceeding right in front of the court that they themselves initiated. So, in their declaratory relief action, and this is in our record, Your Honor, this is at transcript page TR002, they allege that the subject matter of the adversary proceeding that they filed was a core proceeding. So, we know that the adversary proceeding was a core proceeding. Now, if you look at the prayer for relief in the adversary proceeding, it is almost word for word, the prayer for relief and the demand for arbitration. So, if you compare the language at TR006 with the language at WDRU162, the latter being the prayer for relief in the arbitration. Doesn't the bankruptcy court have to decide core versus non-core to its own satisfaction? Sure. I'm just pointing out that throughout the record, there are innumerable places in which the appellant itself, themselves, claim that they need relief from state to determine ownership and the right to distribute. But you're absolutely correct, Judge Ferris. And for Judge Kwan, he made a very careful evaluation. There were opening briefs, response briefs on the motion to relieve from state, reply brief, supplemental briefs, several arguments. This was a very sort of longstanding matter in front of the judge. The trustee wanted to at least start a marketing process without even having an order permitting him to sell a Franco and whose dog opposed it. Finally, the judge said, we've got to resolve these issues of who has a right, who owns it, who has a right to sell it, who's in breach of contract. Appellants filed a declaratory relief action raising all those issues. Judge Kwan, after careful consideration, concluded that, well, these are certainly core issues under 157B2. Well, on the core versus non-core, the arbitration demand, as I read it anyway, did not involve any claims against the estate. Am I right about that? Well, the arbitration demand wouldn't involve claims against the estate. It was pre-petition against it. I don't know that I agree with that. The arbitration demand wanted a finding or a declaration that the claimant is not in breach of contract. So that really goes to the issue of the claim in the bankruptcy. Who is right or who is wrong? What I'm grabbing at is it seems the arbitration arguably is more about the debtor's rights against whose dog rather than the other way around. That's right. And it sounds more like Stern versus Marshall to me. Well, the arbitration was started by whose dog? Trying to get a determination as to who was in breach of the agreement. The debtor filed a counterclaim. That was pending in the arbitration when the bankruptcy was filed and the arbitration was subject to the automatic stay. So if the trustee now were to seek recovery for breach of contract, Stern would not be implicated because whose dog and Franco have both filed claims in the bankruptcy estate. And the counterclaim would be based on the same transaction as the claim, and accordingly it's outside Stern, which involved, you know, a bankruptcy tort claim in response to a probate issue. So I don't think Stern does apply. What the bankruptcy court did find, and which is supported amply by the record, is that the arbitration would have conflicted with fundamental bankruptcy policies, which is an issue which is a matter of discretion for the bankruptcy court once a determination is made that it's a core matter. Why? It involved the administration of the estate. It involved the determination of proofs of claim. It involved the sale of property. And there's nothing more fundamental to a bankruptcy case than selling assets and paying creditors. That's what bankruptcy is about. I mean, ignoring reorganization for a moment, every bankruptcy case throughout history since it started has always been about marshaling assets for the benefit of creditors. That's what bankruptcy trustees do. That is their responsibility. That's what Mr. Walker was just trying to do in this case. That's all he's trying to do now. But if there's a dispute over the extent of the trustee's power and right to do that, if there are issues about who breached the contract and whether or not claims are valid and invalid, that should be decided by the bankruptcy court. That's very fundamental to the bankruptcy process. And there was a pending lawsuit in front of the judge who had to decide whether to opt for arbitration, which would have been piecemeal litigation, after which the parties would have had to go back to the bankruptcy court anyway. Let me briefly, I don't know how much time I have left. I'm sorry, but let me briefly address. Five minutes. Oh, good. I shouldn't need more than that. I want to deal with the five points that counsel has raised. On the issue of bad faith, there's no case law that says that if someone files a bankruptcy case in response to a lawsuit, that's bad faith. People do that all the time. They don't want to defend the lawsuit. They don't have the money to defend it. For whatever reason, they file bankruptcy. They don't need a multitude of creditors. Although in this case, there is a creditor, if it matters, which it doesn't. There is a non-insider creditor. It's a U.S. bank. They have a $26,000 claim. This is in the record at WDRU 143. So counsel's point that there are no non-insider creditors is incorrect. I'm not sure that the father of the principle of working child would be an insider anyway. But that argument is absolutely numeric. We discussed core versus non-core. There's unquestionably by admission in the adversary proceeding, which parallels the demand perpetration, these are core matters, selling assets, determining ownership of assets, evaluating and processing claims either by or against the estate. On the financial ability to arbitrate, the point that the trustee made was as follows. When you go to arbitration, you have to pay the arbitrators. Arbitrators don't work for free. Some of them are more expensive than others. I found that one particular case where we had a three-arbitration panel became enormously expensive. Every time we had a motion, you had to pay them for their time, which wasn't inexpensive. There was a front-end cost of $50,000 to participate in this arbitration. The trustee doesn't have any cash. So that was a factor that this arbitration was not approved. Yes. So the bankruptcy trustee has no cash. So sending us to arbitration might have been sending us to misery because we wouldn't have been able to afford it. Not that we don't have counsel, but there's costs that you have to pay. You have to pay them in advance. Counsel also, I guess, argued about what is really a discretionary call by the court, which is whether the underlying, the matters that are pending in the arbitration would involve, would conflict with the purposes and policies of the bankruptcy code. I just don't think there's anything more fundamental, as I said earlier, than the administration of assets, the liquidation of assets, the liquidation of claims, the termination of ownership. These are all things that bankruptcy courts have to do on a routine basis, and they are fundamental to the process. When somebody files bankruptcy, you need a court and a trustee to marshal assets, evaluate claims, and pay creditors. So both on any issue that might be considered an issue of law, such as court versus non-court, or an issue of discretion, which would be the policy considerations, I think that the judge's decision is squarely within the region of the trilogy of Ninth Circuit cases, all of which affirmed decisions to deny arbitration. Happy to answer any other questions. Thank you very much. You're welcome. Thank you. Ms. Cohen, you've got about a minute. I've got to talk fast. Sorry. Okay. EBERA, EPD, and THORP are not relevant here. They've been distinguished in the other cases. EBERA is a 523. EPD was a farther than conveyance by a trustee against a third party, and THORP was about a plan under Section 524, and the actual plan itself was attacked. So those are completely unlike our case, so they're irrelevant here. This idea of the fundamental bankruptcy policies, that was certainly argued in the bankruptcy court. If that were the case, then everything that had any connection to a bankruptcy case would never be allowed to be heard anywhere else, and I don't think that's what the arbitration cases and the other non-court cases say. One other important point is that we noted it's in the record at page 15 of our excerpt. We filed this adversary proceeding in case Relief First State was denied. They were filed on the same day. The prayers don't really match up, but we did it completely in response to Judge Kwan's noting that he has to figure out who owns this. We said, great, we'll move for Relief First State, and in case you deny that, we'll file a complaint because we need determination. So I've got seven seconds, and I want to thank you, Honors, very much for a lot of music. Thank you, Honors. Thank you very much. All right, in this case, based on our prior order, the matter will be submitted on July 12th, and we wish you the best of luck in your settlement discussions in the meantime, and you'll be getting a decision after that date unless she tells you. That's all. Thank you.
judges: FARIS, LAFFERTY, SPRAKER